UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDMUND LOWELL FIELDS, #487029,

                    Petitioner,

                                        CASE NO. 2:12-CV-12658
v.                                      HONORABLE DENISE PAGE HOOD

DAVID BERGH,

                    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I.   Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Edmund Lowell Fields ("Petitioner"), confined at the Thumb Correctional Facility in Lapeer, Michigan at the time he instituted this action, was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Eaton County Circuit Court.  He was sentenced to consecutive terms of 23 to 50 years imprisonment and two years imprisonment in 2005.  In his pleadings, Petitioner raises 18 claims concerning the great weight of the evidence, the submission of a first-degree murder charge, the sufficiency of the evidence, the jury instructions, the conduct of the prosecutor, perjured testimony, the effectiveness of trial and appellate counsel, the acceptance of the jury verdict, and his state collateral proceedings.  For the reasons set forth, the Court denies the habeas petition.  The Court also denies a certificate of appealability and denies leave

to proceed in forma pauperis on appeal.

**II.   <u>Facts and Procedural History</u>**

Petitioner's convictions arise from the shooting death of Deshawn Bibbs, the father of his pregnant girlfriend's two other children, following an altercation outside a gas station/convenience store in Waverly, Michigan on April 17, 2005.

Several eyewitnesses testified at trial.  Vaneeka Black testified that she went to the Quicky Convenience Store that day with her cousin Shyann Green.  She saw two men and a woman talking in the parking lot as she entered the store.  When she exited, the two men were fighting and wrestling.  They were arguing about somebody "riding with somebody's girl."  Vaneeka saw Petitioner spit on Bibbs.  Eventually, Bibbs returned to his car.  She saw Petitioner go to his car, open the hood, and walk toward Bibbs.  She heard someone yell, "he has a gun," so she ran into the store.  She heard clicking and saw Petitioner point the gun.  When she got to the back of the store, she heard two or three gunshots.  She called 911, went back to the front of the store, and saw Petitioner driving away.

Shyann Green testified that she was with Vaneeka Black that day.  She also saw the two men fighting and wrestling, but did not hear what they were saying.  She saw both men go to their cars and saw Petitioner get a gun.  As Bibbs tried to drive away, Petitioner pointed the gun at Bibbs and fired three or four times.  Bibbs was bleeding at his temple.

Sade Johnson testified that she was at the store that day with a friend.  She went into the store and bought a drink.  When she exited, she saw Bibbs and her cousin, Tameca Jackson, in the parking lot.  A minute or two later, she saw Petitioner drive up in his car.  He walked over to Tameca and asked her what she was doing in the car with Bibbs.  Words were exchanged.  Then Bibbs got out of his car and hit Petitioner in the face.

2

She and Tameca pulled them apart as they were trying to fight.  At one point, Bibbs threw Petitioner to the ground.  She and Tameca kept trying to stop them from fighting.  They kept tussling with each other.  Bibbs grabbed Petitioner, slammed him to the ground, and choked him.  Petitioner looked like he could not breathe.  Tameca tried to pull Bibbs away from Petitioner and eventually Bibbs let him go.  Bibbs went to his car and Petitioner walked to his car.  She then heard three gunshots, but did not see the shooting.

Tameca Jackson testified that she had a 14-year relationship with DeShawn Bibbs and had two children with him.  She last lived with Bibbs in January, 2004, but her children stayed with him and he talked about getting back together with her all the time.  She began a relationship with Petitioner in September, 2003 and moved in with him in February, 2004.

On the day of the incident, Petitioner dropped Tameca off at her grandmother's house around 3:00 p.m. and she stayed there until about 6:00 p.m.  She called Bibbs to pick her up so that she could see her children.  They stopped at the Quicky Convenience Store on Waverly Road near Bibb's house.  When they arrived, her cousin Sade Johnson was parked in the lot.  Bibbs went into the store while she stayed outside and talked to her cousin.  As Bibbs exited the store and returned to the car, Petitioner pulled up in his car.  Petitioner parked his car, came over, and asked Tameca what she was doing in Bibb's car.  Tameca said that she was going to see her daughters.  As Petitioner began walking away, Bibbs made a gesture or said something to him.  The two men argued.  Petitioner said, "I heard you been wanting it with me," to Bibbs and they got in each other's faces.  Tameca stepped between them and told them to get back into their cars.  Instead, Bibbs hit Petitioner in the face.  Petitioner tried to hit back, but missed.  Bibbs picked up Petitioner, slammed him to the ground, and choked him.  Tameca was able to pull them apart.

3

Petitioner went to his car and pulled the hood release.  Tameca knew that was where Petitioner kept a gun, so she told Bibbs that he needed to leave.  Petitioner walked back toward them and the men started arguing again.  Bibbs hit Petitioner, slammed him to the ground, and choked him again.  Tameca intervened and pulled them apart.  Bibbs had blood on his face and kept telling Petitioner that he was a "B----" and fights like a "B----" because he bit him.  They continued arguing.  The store manager came out and said he was calling the police.  Bibbs then hit Petitioner a third time, slammed him to the ground, and choked him.  Tameca could not get them apart, so she asked her cousin for help.  Eventually they were able to pull Bibbs away from Petitioner.  Tameca told Bibbs he needed to leave because she knew that Petitioner had a gun.  Bibbs was not armed.  Bibbs got into his car and was starting to back out when Petitioner shot him.  Tameca saw Petitioner point the gun at Bibbs' car.  When Petitioner first pulled the trigger, she heard a clicking sound, but the gun did not fire.  Petitioner shot again and she saw two bullets hit the windshield.  She walked toward Bibb's car.  Petitioner stood there saying something, then walked away and left in his car.  Tameca noticed that Bibbs was shot in the head.

Tameca further testified that she bought the gun used in the shooting in September, 2004.  She and Petitioner stored it under their bed at home and under the hood of the car when they traveled.  She last saw the gun under their bed a few days before the shooting.

Several police officers testified about their investigation of the shooting.  Their testimony indicated that the gunshots were fired within a few feet of the victim.  The medical examiner testified that Bibbs had several contusions and lacerations on his body, including a bite mark, and that he died from a gunshot wound to the head.

Petitioner testified in his own defense at trial.  He discussed his relationship with

4

Tameca Jackson and recalled prior altercations with DeShawn Bibbs at a Mexican restaurant, Tameca Jackson's school, and a nightclub.   Petitioner testified about the confrontation at the Quicky Convenience Store.   He described the argument and fight with Bibbs.   He recalled being slammed to ground and choked.   Petitioner admitted firing the gun while Bibbs was in his car, but said that he did not intend to injure or kill Bibbs.   He claimed that he acted in the heat of passion while he was angry and upset.

At the close of trial, the jury convicted Petitioner of second-degree murder and felony firearm.   The trial court subsequently sentenced him as a second habitual offender to consecutive terms of 25 to 50 years imprisonment and two years imprisonment.

Following his convictions and sentencing, Petitioner, through counsel and in a pro per supplemental pleading, filed an appeal of right with the Michigan Court of Appeals raising claims concerning the great weight of the evidence, the submission of the first-degree murder charge to the jury, the lack of instruction on self-defense, imperfect self-defense, and defense of others, the conduct of the prosecutor, the effectiveness of trial counsel, and the scoring of the sentencing guidelines.   The court affirmed Petitioner's convictions and sentences, but remanded for correction of the pre-sentence investigation report.   *People v. Fields*, No. 266738, 2007 WL 1712619 (Mich. Ct. App. June 14, 2007) (unpublished).   Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.   *People v. Fields*, 480 Mich. 925, 740 N.W.2d 264 (2007).

Petitioner subsequently filed a pro se motion for relief from judgment with the trial court raising claims concerning the lack of instruction on self-defense, the acceptance of the verdict, the sufficiency of the evidence, the use of perjured testimony, and the

5

effectiveness of trial and appellate counsel.  Defense counsel moved to amend the motion for relief from judgment and supplemented Petitioner's argument on the claim concerning the acceptance of the verdict.  The trial court denied the motion finding that Petitioner had not shown good cause and actual prejudice for failing to raise the claims on direct appeal and ruling that there was no evidence that the court impeached or compromised the jury verdict.  *People v. Fields*, No. 05-279-FC (Eaton Co. Cir. Ct. April 6, 2010).  More than one month later, Petitioner filed a supplemental brief with the trial court concerning the manslaughter jury instruction.  The trial court deemed this a successive motion for relief from judgment and denied it pursuant to Michigan Court Rule 6.502(G).  *People v. Fields*, No. 05-279-FC (Eaton Co. Cir. Ct. June 29, 2010).  Petitioner then filed another motion for relief from judgment pursuant to Michigan Court Rule 2.612(C)(1) raising claims concerning the trial court's ruling on his first motion for relief from judgment and the effectiveness of defense counsel on collateral review.  The trial court deemed this another successive motion for relief from judgment and denied it pursuant to Michigan Court Rule 6.502(G). *People v. Fields*, No. 05-279-FC (Eaton Co. Cir. Ct. Oct. 29, 2010).

After the trial court denied the various motions for relief from judgment, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to establish entitlement to relief under Mich. Ct. R. 6.508(D)." *People v. Fields*, No. 303330 (Mich. Ct. App. Sept. 20, 2011) (unpublished).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied.  *People v. Fields*, 491 Mich. 919, 812 N.W.2d 732 (2012).  The Michigan Supreme Court also denied reconsideration. *People v. Fields*, 492 Mich. 858, 817 N.W.2d 79 (2012).

6

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I.     The murder verdict is a manifest injustice and it violates the federal and Michigan due process right to a fair trial because the verdict is against the great weight of the evidence.

II.    Trial counsel rendered ineffective assistance under the state and federal constitutions by failing to request the jury instructions to self defense, imperfect self-defense, and defense of others.

III.   The trial court erred by improperly submitting the first-degree and second-degree murder instructions to the jury where there was no evidence of premeditation and the resulting compromise verdict violated petitioner's state and federal constitutional due process right to a fair trial.

IV.    The trial court erred in its April 6, 2010 order when it failed to review and rule on the issues of Petitioner's original MCR 6.500 motion for relief from judgment filed on January 26, 2009 while yet reviewing and ruling on Petitioner's attorney's amended MCR 6.500 motion, which was filed on March 17, 2010 after the Petitioner's attorney and the assistant prosecutor stipulated in February of 2009 to a 56-day extension of time for the amended motion, and because it is error, all issues of the Petitioner's original 6.500 motion are considered exhausted at the trial court level.

V.     The trial court in its October 29, 2010 opinion erred and abused its discretion when the trial court deemed and denied petitioner's MCR 2.612(C) (1) (A) (D) & (F) motion for relief from judgment as a successive motion under MCR 6.502(G).

VI.    The trial court erred in not sua sponte giving self-defense instructions.

VII.   Petitioner's right to due process and a fair trial was violated when the trial court refused to accept a verdict of not guilty after the jury had concluded deliberations.

VIII.  The evidence was insufficient to support Petitioner's conviction of second-degree murder because once evidence supporting a claim of self defense was presented, the prosecutor failed to negate that evidence.

IX.    Petitioner's state and federal due process right to a fair trial was violated when the prosecutor permitted Tameca Jackson to perjure herself by testifying there were no threats between the decedent and Petitioner and when the prosecutor committed further misconduct

7

during closing arguments.

X.    Petitioner was denied his state and federal right to effective assistance of trial counsel where: (1) his trial attorney failed to object to the trial court not sua sponte giving self-defense or imperfect self defense instructions to the jury, (2) his trial attorney failed to object to the prosecution knowingly allowing witness Tameca Jackson to testify falsely and failed to object when the prosecutor committed further misconduct during closing arguments, and (3) his trial attorney failed to object when the trial court actively "coerced" a guilty verdict from the jury after they found petitioner not guilty of murder.

XI.    Petitioner was denied his state and federal right to effective assistance of appellate counsel where: (1) his appellate attorney failed to raise the above insufficient evidence issue in his appeal by right, and (2) his appellate attorney failed to raise in Petitioner's appeal by right the above ineffective assistance of trial counsel issues.

XII.   The April 6, 2010 order overlooking Petitioner's entire 6.500 motion while denying attorney Reynolds' amended 6.500 motion is void and the rendering of it is an inadvertent mistake made by the Eaton County Circuit Court Judge Thomas S. Eveland, because, in February of 2009, attorney Reynolds and Senior Assistant Prosecutor Worden, with the court's approval, stipulated to a 56-day extension of the time for Reynolds to file an amended motion for relief from judgment; however, Reynolds filed the amended 6.500 motion over a year later, on or about March 17, 2010.

XIII.  Attorney Reynolds' deception in convincing Petitioner that he would file on Fields' behalf a timely 6.500 motion raising all of Petitioner's claims and his failure to do so constitutes extraordinary circumstances which mandates setting aside the April 6, 2010 order under MCR 2.612(C)(1)(f).

XIV.   Petitioner's federal due process rights were violated: (1) when the trial court's first-degree and second-degree murder instructions to the jury failed to mention that the circumstances that reduce the killing to the lesser charge of voluntary manslaughter (which the prosecutor must disprove beyond a reasonable doubt) are that which are found under CJI 2d 16.9 being the circumstance of Petitioner committing the killing in a sudden heat of passion caused by adequate provocation, and (2) when the trial court's manslaughter instruction erroneously required the prosecutor to prove the above circumstances of CJI 16.9 beyond a reasonable doubt.

XV.    Whether petitioner is not required to meet the good cause and actual

8

prejudice requirement to permit relief under MCR 6.508(D)(3) of his claims that he was denied his federal due process rights to adequate jury instructions of the prosecutor's burden on first-degree and second-degree murder and in regard to an incorrect jury instruction of the prosecutor's burden on voluntary manslaughter because the claims constitute jurisdictional defects that render his conviction and sentence void.

XVI.    Petitioner Fields is actually innocent of the second-degree murder offense; therefore, the "good cause" requirement of subrule (d)(3)(a) is waived in regard to all issues raised in his original 6.500 motion and supplemental brief.

XVII.   For the purpose of a federal court considering the merit of petitioner Fields' claims on habeas review, equitable tolling of the statute of limitations is appropriate, with cause existing for the procedural default in failing to present claims in petitioner's MCR 6.500 motion for relief from judgment.

XVIII.  The one-year statute of limitations may toll in petitioner's case and the court may consider the merits of any procedurally defaulted claims of this habeas petition because Fields is actually innocent of second-degree murder.

Respondent has filed an answer to the petition contending that it should be denied because the claims are not cognizable, barred by procedural default, and/or lack merit. Petitioner has filed a reply brief.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, provides the standard of review for federal habeas cases brought by state prisoners. The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

9

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S.

Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."   *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).   Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.   *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court" and quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam).   Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"   *Harrington*, 131 S. Ct. at 785.   Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court

decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV.   Analysis

### A.   Direct Appeal Claims

#### 1.   Great Weight of the Evidence (Habeas Claim I)

Petitioner first asserts that he is entitled to habeas relief because the jury verdict was against the great weight of the evidence. Respondent contends that this claim is not cognizable upon habeas review. This Court agrees. It is well-established that habeas review is not available to correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979). Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state

12

law issue which is not cognizable on habeas review. A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Habeas relief is not warranted on this claim.[1]

### 2.   Submission of First-Degree Murder Charge (Habeas Claim III)

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in submitting a first-degree murder charge to the jury such that his conviction for second-degree murder is the result of a compromise verdict. Respondent contends that this claim lacks merit.

Clearly-established Supreme Court law provides only that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that submission of a charge upon which there is insufficient evidence violates a defendant's constitutional rights where the defendant is acquitted of that charge. The United States Court of Appeals for the Sixth Circuit has recognized that "[s]ome courts, under similar facts have concluded that submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge." *Daniels v. Burke*, 83 F.3d 760, 765 n. 4 (6th Cir. 1996) (citing cases); *see also Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001), *but cf. Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D. Mich. 2002) (relying upon double jeopardy case of *Price*

---

[1]The Michigan Court of Appeals denied relief on this claim, finding that the evidence was sufficient to support the second-degree murder verdict and that the evidence as a whole did not so heavily weigh against the verdict that a serious miscarriage of justice will result if the conviction is allowed to stand. *Fields*, 2007 WL 1712619 at *1-2.

*v. Georgia*, 398 U.S. 323, 331 (1970)).  In *Daniels*, however, the Sixth Circuit found it unnecessary to decide the issue in light of the fact that the evidence of first-degree murder was sufficient to submit that charge to the jury.  *Id.*

This Court need not resolve the matter because, as in *Daniels*, there was sufficient evidence of premeditation and deliberation to submit the first-degree murder charge to the jury.  Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate.  *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992).  Premeditation and deliberation require sufficient time to allow the defendant to take a second look.  *Id.*  The time interval may be minimal –  merely seconds – depending upon the circumstances of the killing.  *People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N.W.2d 497 (1975).  Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Schollaert*, 194 Mich. App. at 170.  Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).  Use of a lethal weapon supports an inference of an intent to kill.  *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975).

Applying the foregoing standards, the Michigan Court of Appeals ruled that the prosecution presented sufficient evidence of premeditation and deliberation to support the first-degree murder charge.  The court explained:

14

After a review of the record, we conclude that there was sufficient evidence of premeditation and deliberation to submit the first-degree murder charge to the jury. During the fight, defendant stated to Bibbs "I've got something for you," referring to his gun under the hood of his car. After Bibbs released him and the fight was seemingly over, defendant picked up his car keys, walked over 30 feet to his car, proceeded to the hood of his car, took out the gun, and began to walk back around his car towards Bibbs. Defendant, although he claimed that he thought Bibbs was behind him as he went to his car, admitted that when he turned around, Bibbs was in his car. Even after he realized Bibbs was backing out of the parking space to leave, defendant did not stop. He aimed the gun at Bibbs through the windshield. When the first pull of the trigger "clicked," defendant took the time to chamber a round. He then shot three times at point blank range. From the circumstances, there was sufficient evidence of deliberation and premeditation for a rational trier of fact to conclude that all of the elements of first-degree murder were met beyond a reasonable doubt. There is no evidence of a jury compromise that would require reversal, because the higher charge was properly submitted to the jury.

*Fields*, 2007 WL 1712619 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. The testimony of the prosecution witnesses provided sufficient evidence to show that Petitioner intended to shoot Bibbs, that he had time to consider his actions before retrieving his gun and before firing it three times, that he shot Bibbs in the head at relatively close range while Bibbs was sitting in his car and attempting to leave, and that he fled the scene. Given such evidence, a reasonable fact-finder could have found that Petitioner acted with the intent to kill, that he had time to consider his lethal actions, and that he acted with sufficient premeditation and deliberation so as to justify the submission of the first-degree murder charge to the jury.[2] Habeas relief is not warranted on this claim.

### 3.    Jury Instructions & Trial Counsel's Effectiveness (Habeas Claim

---

[2]Such evidence was also sufficient to support Petitioner's second-degree murder and felony firearm convictions. *See* discussion *infra*.

15

**II, VI)**

Petitioner asserts that he is entitled to habeas relief because the trial court failed to instruct the jury on self-defense, imperfect self-defense, and defense of others and because trial counsel was ineffective for failing to request those instructions.  Respondent contends that the claims lack merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned.  Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The failure to give an instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the petitioner's trial fundamentally unfair.  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007).  A failure to instruct does not deprive a petitioner of fundamental fairness when the instructions as a whole adequately present the defense theory to the jury.  *Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson*, 431 U.S. at 155.  State law instructional errors rarely form the basis for federal habeas relief.  *Estelle*, 502 U.S. at 71-72.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a

16

showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both

17

'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals denied relief on these claims.  The court ruled that Petitioner failed to overcome the presumption that trial counsel's decision to argue that provocation mitigated the shooting to manslaughter, rather than to claim self-defense, imperfect self-defense, or defense of others, was sound trial strategy due to the weaknesses of those defenses in light of the evidence.  The court further ruled that the trial court was not required to sua sponte give a self-defense instruction because such an instruction was not supported by the evidence.  *Fields*, 2007 WL 1712619 at *3-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Counsel's decision not to pursue a claim of self-defense, imperfect self-defense, or defense of others was a reasonable trial strategy because those defenses would have been inconsistent with the testimony which showed that Petitioner did not retreat when he had the chance to do so safely, that the use of deadly force was not immediately necessary, and that neither Tameca Jackson or her unborn baby were in imminent danger.  Moreover, counsel's decision to argue provocation and pursue a heat of passion defense was more consistent with the testimony presented at trial.  Counsel's decision not to present inconsistent defense theories was strategic and reasonable.  *See, e.g., Poindexter v. Mitchell*, 454 F.3d 564, 573–75 (6th Cir. 2006) (counsel was not deficient for failing to pursue of "heat of passion" defense where such a defense was inconsistent with petitioner's claim that he was not involved in the crime);

18

*Jackson v. Shanks*, 143 F.3d 1313, 1326 (10th Cir. 1998) ("Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance."). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has not shown that trial counsel was deficient.

Additionally, given Petitioner's defense that he was provoked and acted in the heat of passion, the trial court was not required to sua sponte instruct the jury on self-defense under state law. The evidence at trial also did not support such an instruction. Petitioner has not shown that the jury instructions, as given, rendered his trial fundamentally unfair. Habeas relief is not warranted on these claims.

### 4.      Prosecutor's Conduct & Trial Counsel's Effectiveness (Habeas Claim IX, X)

Petitioner asserts that he is entitled to habeas relief because the prosecutor committed misconduct during closing arguments by arguing facts not in evidence and because trial counsel was ineffective for failing to object to such matters. Specifically, Petitioner objects to the following remarks by the prosecutor: (1) stating that Tameca Jackson testified that there were no threats or assault at the restaurant during the El Azteco incident; (2) saying that Petitioner "spit on [Bibbs] then walks over to his vehicle and comes back with a gun"; (3) accusing Petitioner of searching the streets for Bibbs and packing the gun before he shot him; (4) referring to the handgun used in the shooting as "the murder weapon." Pet. Suppl. App. Brf., p. 10. Respondent contends that these claims lack merit.

19

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

The Michigan Court of Appeals denied relief on these claims. The court determined that the claims were procedurally defaulted because Petitioner failed to object to the prosecutor's arguments at trial and that the claims lacked merit because, except for a statement about Petitioner spitting on Bibbs, they were supported by the evidence or reasonable inferences therefrom. The court further stated that counsel's decision not to object to the prosecutor's closing argument was "a quintessential example of trial strategy" which would not be second-guessed on appeal. *Fields*, 2007 WL 1712619 at *5.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof. All of the prosecutor's arguments were supported by the evidence presented at trial or reasonable inferences from the evidence. The prosecutor's remarks about El Azteco were supported by Tameca Jackson's testimony on re-direct examination. Trial Tr., vol. II, pp. 169-70. The prosecutor's statement about Petitioner spitting on Bibbs was supported by Vaneeka Black's testimony (abeit not Tameca Jackson's testimony). Trial Tr., vol. I, p. 222. The prosecutor's comments about Petitioner packing the gun and searching for Bibbs were supported by Tameca's Jackson's

20

testimony that she last saw the gun under her bed a few days before the shooting and the testimony that Petitioner had driven around looking for her on the day of the shooting. Trial Tr., vol. II, pp. 61-64.  The prosecutor's reference to the handgun as the murder weapon was supported by the testimony of the witnesses who described the shooting. Petitioner has not shown that the prosecutor's closing argument was improper or that it denied him a fundamentally fair trial.  Given such circumstances, trial counsel's decision not to object to the prosecutor's closing argument was a matter of sound trial strategy. Petitioner fails to establish that counsel erred and/or that he was prejudiced by counsel's conduct.  Habeas relief is not warranted on these claims.

### B.    Collateral Review Claims - Procedural Default

Respondent contends that Petitioner's claims concerning the sufficiency of the evidence, the acceptance of the verdict, the elicitation of perjured testimony, the effectiveness of trial counsel (as to the failure to object to alleged perjury and acceptance of the verdict), and the jury instructions (as to first-degree and second-degree murder and manslaughter) are barred by procedural default because Petitioner first raised those issues in the state courts on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D) and Michigan Court Rule 6.502(G).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005);

*Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).  The last explained state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented his claims concerning sufficiency of the evidence, the acceptance of the verdict, the elicitation of perjured testimony, the effectiveness of trial counsel (as to the failure to object to alleged perjury and acceptance of the verdict), and the jury instructions (as to first-degree and second-degree murder and manslaughter) to the state courts in his motions for relief from judgment.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  *See* MICH. CT. R. 6.508(D)(3).  The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.  *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).  Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, as to the initial motion for relief from judgment, the state trial court denied relief on procedural grounds by ruling that Petitioner had not shown cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct

appeal.  As to the successive motions for relief from judgment, the trial court relied upon Michigan Court Rule 6.502(G), which limits a defendant to filing one motion for relief from judgment absent a retroactive change in the law or newly-discovered evidence.  The state courts thus clearly relied upon a procedural default to deny Petitioner relief on these claims.  Accordingly, the claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default.  In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690.  Judicial scrutiny of counsel's performance is thus "highly deferential." *Id.* at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

23

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial claims on direct appeal including a great weight of the evidence claim, jury instruction claims with a related ineffective assistance of counsel claim, and sentencing claims. None of the defaulted claims are "dead-bang winners," particularly given the significant evidence of guilt

24

presented at trial.  Moreover, even if appellate counsel erred, Petitioner cannot show that he was prejudiced by counsel's conduct (or demonstrate prejudice to excuse the procedural default) because the defaulted claims lack merit.  *See* discussion *infra*.

Lastly, Petitioner fails to demonstrate that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial.  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Moreover, actual innocence means factual innocence, not mere legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Petitioner makes no such showing.  He admits shooting Bibbs, and merely alleges that there was insufficient evidence to convict him of second-degree murder.  Such allegations do not establish his actual innocence of the crime.  These claims are thus barred by procedural default, lack merit, and do not warrant relief.

### C.    Collateral Review Claims - Merits

#### 1.    Sufficiency of the Evidence (Habeas Claim VIII)

Petitioner asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence of his guilt at trial.  In particular, he claims that the prosecution failed to sufficiently rebut the evidence of provocation and/or self-defense.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The question on a

sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Furthermore, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).  "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim."  *Matthews*, 319 F.3d at 788-89.

Under Michigan law, the elements of second-degree murder are:  (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. MICH. COMP. LAWS § 750.317;  *People v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868, 878 (1998) (citing *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325, 331 (1996)). Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency

26

of such behavior is to cause death or great bodily harm.  *Id.* at 464 (citing *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304, 326 (1980)).  Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm.  *People v. Djordjevic*, 230 Mich. App. 459, 463, 584 N.W.2d 610, 612 (1998) (citing *Aaron*).  Malice may also be inferred from the use of a deadly weapon.  *Carines*, 460 Mich. at 759, 597 N.W.2d at 136.   The elements of felony firearm are that the defendant possessed a firearm during the commission of, or an attempt to commit, a felony offense.  MICH. COMP. LAWS § 750.227b;  *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863, 873 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864, 869 (1999)).

Direct or circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177, 180 (1993), including identity.  *People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740, 742 (1985), and the defendant's intent or state of mind.  *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31, 34 (1997).

In denying relief on Petitioner's great weight of the evidence claim, the Michigan Court of Appeals indicated that the prosecution presented sufficient evidence to support Petitioner's second-degree murder and felony firearm convictions.  The court found that Petitioner "clearly acted with malice" even if he did not intend to kill Bibbs because he "aimed his pistol at Bibbs through the windshield and shot three times, standing within two to six feet of the car and because "[s]hooting a gun at a person at such close range clearly indicates an obvious disregard of life-endangering consequences."  *Fields*, 2007 WL 1712619 at *1.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[3] The prosecution presented sufficient evidence to establish Petitioner's guilt of second-degree murder and felony firearm through the testimony of the eyewitnesses, including Tameca Jackson, Vaneeka Black, Shyann Green, and Sade Johnson.   Considered in a light favorable to the prosecution, such evidence was sufficient to show that Petitioner shot at Bibbs multiple times at relatively close range as Bibbs was retreating from the altercation, that Petitioner shot Bibbs in the head, that Petitioner was not in immediate danger when he committed the shooting, that Petitioner had time to consider his actions before retrieving his gun and again before shooting Bibbs, and that Petitioner acted with the requisite malice to support his second-degree murder conviction.

Petitioner challenges the credibility of the prosecution's witnesses and the jury's evaluation of the evidence.   However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").   The jury's verdict was not unreasonable.   The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the crimes of second-degree murder and

---

[3]The Court notes that it would reach the same result under a de novo standard of review.

felony firearm.  Habeas relief is not warranted on this claim.

### 2.     Perjured Testimony (Habeas Claim IX)

Petitioner also asserts that he is entitled to habeas relief because the prosecution elicited perjured testimony from Tameca Jackson.  The Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972).  It is well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false.  *Coe*, 161 F.3d at 343.  A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury.  *Napue*, 360 U.S. at 270.

Petitioner makes no such showing.  He claims that Tameca Jackson testified at the preliminary examination that there were threats between him and Bibbs after they fought, but testified at trial that there were no such threats.  Petitioner, however, fails to establish that Tameca Jackson's testimony was false, rather than merely inconsistent and/or a clarification or supplementation of her prior testimony.  The fact that a witness contradicts herself or changes her story does not establish perjury.  *United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998); *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993).  In fact,

Tameca Jackson acknowledged at trial that she could not remember every detail about the night of the incident.  Trial Tr., Vol. II, p. 34.  "While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty."  *Jackson v. Lafler*, No. 06-CV-15676, 2009 WL 1313316, *12 (E.D. Mich. May 11, 2009).  Petitioner fails to present any facts to show that the prosecutor knowingly presented false information.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing on habeas review).  While there were some variations between Tameca Jackson's preliminary examination and trial testimony, Petitioner has not shown that her trial testimony was false or that the prosecution knowingly presented false testimony.  Habeas relief is not warranted on this claim.

### 3.    Acceptance of Jury Verdict (Habeas Claim VII)

Petitioner asserts that he is entitled to habeas relief because the trial court violated his due process rights in taking the jury verdict.  Specifically, he alleges that the trial court refused to accept a "not guilty" verdict on the murder charge after the jury had concluded deliberations and coerced the jury into rendering a "guilty" verdict on the second-degree murder charge.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the

30

outcome of the case.  *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).   Judicial misconduct may arise when the trial judge is accused of conducting the proceedings in a manner which exhibits a "deep-seated favoritism or antagonism that would make fair judgment impossible."   *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002).   A constitutional violation occurs when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment."   *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008).   Additionally, the Sixth Amendment right to a jury trial guarantees a criminal defendant the right to a fair trial by a panel of impartial jurors.  *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

In denying Petitioner's motion for relief from judgment, the trial court denied relief on this claim on procedural grounds, as well as the merits.   The court explained in pertinent part:

> The Court further finds that there is no evidence that the Court impeached or compromised the jury verdict.  The jury entered the courtroom to announce their verdict carrying with them the verdict sheet marked and signed by the foreperson.  While the foreperson initially misstated the verdict, she immediately corrected herself.  There was no jury deliberation in the courtroom and the corrected announced verdict was in conformity with the signed verdict form.  All jurors agreed.

*Fields*, No. 05-279-FC at *2 (April 6, 2010).  The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[4] The trial record clearly indicates that the jury foreperson mis-spoke while announcing the jury's verdict as to Count 1, that the trial court questioned the jury about the verdict, that

---

[4]The Court notes that it would reach the same result under a de novo standard of review.

the jurors consulted, that the jury foreperson acknowledged her mistake, and that she then announced the jury's verdict of guilt on the second-degree murder charge as reflected on the verdict form. The jurors agreed that they found Petitioner guilty of second-degree murder and felony firearm. *See* Trial Tr., Vol. V, pp. 85-87. Petitioner has not shown that the trial court coerced the jury into changing their verdict, that the judge or jury was biased against him, or that his due process rights were otherwise violated. Habeas relief is not warranted on this claim.

### 4.    Effectiveness of Trial Counsel (Habeas Claim X)

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the jury instructions, the alleged prosecutorial misconduct and perjury, and the acceptance of the jury verdict. Given the state courts' decisions and/or this Court's determination that the underlying jury instruction, prosecutorial misconduct, perjury, and jury verdict claims lack merit, however, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct so as to establish that counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### 5.    Jury Instructions (Habeas Claim XIV)

Petitioner asserts that he is entitled to habeas relief because the trial court erred in instructing the jury on first-degree murder, second-degree murder, and manslaughter. This claim lacks merit. As discussed *supra*, state law jury instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather,

taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Id.* at 72; *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

Petitioner makes no such showing. In fact, the record reveals that the trial court properly instructed the jury on the elements of first-degree murder, second-degree murder, and voluntary manslaughter. *See* Trial Tr., Vol. V, pp. 72-76. The trial court also instructed the jury on the prosecution's burden of proof. *Id.* at 63-64. Petitioner has not shown that the trial court erred or that the jury instructions as given deprived him of a fundamentally fair trial. Habeas relief is not warranted on this claim.

### 6.   Effectiveness of Appellate Counsel (Habeas Claim XI)

Petitioner asserts an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the defaulted collateral review claims on direct appeal. Petitioner is not entitled to relief on any such claim. As discussed *supra*, he has failed to establish that appellate counsel was ineffective under the *Strickland* standard – and the defaulted claims lack merit. Habeas relief is thus not warranted on this claim.

### 7.   Trial Court Error on Collateral Review (Habeas Claims IV, V, XII, XIII)

Petitioner asserts that he is entitled to habeas relief because the trial court procedurally erred in handling his various motions for relief from judgment and rendered inadequate decisions. These claims lack merit. It is well-settled that a state court's alleged failure to properly apply state law or its own procedural rules is not cognizable on federal habeas review. A federal court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *Estelle*, 502 U.S. at 67-68. Habeas relief is unavailable for mere errors of state law and a federal court will not review a state

33

court's decision on a matter of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Moreover, the United States Court of Appeals for the Sixth Circuit has consistently held that "errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007). Because states "have no obligation to provide" post-conviction review under the Constitution, *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987), a federal habeas petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) (citing *Finley*); *Clark v. McLemore*, 291 F. Supp. 2d 535, 542 (E.D. Mich. 2003). Challenges to state collateral post-conviction proceedings cannot be brought under the federal habeas statute because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). The scope of the writ does not encompass a "'second tier of complaints about deficiencies in state post-conviction proceedings.'" *Id.* (quoting *Kirby*, 794 F.2d at 248). Because Petitioner challenges the trial court's application of state law and rules in the context of his state collateral post-conviction proceedings, he fails to state a claim upon which habeas relief may be granted as to these issues. Habeas relief is not warranted.

**8.    Procedural Default & Statute of Limitations (Habeas Claims XV, XVI, XVII, XVIII)**

Lastly, Petitioner raises several claims regarding the issues of procedural default and the one-year statute of limitations for federal habeas actions in his pleadings.  Such issues, however do not provide independent bases for habeas relief.  The Court has addressed the procedural default issue and the merits of the defaulted claims, *see* discussion *supra*, and neither Respondent nor the Court contend that the habeas petition is untimely.  Habeas relief is not warranted.

**V.**     **Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained his petition.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural

35

ruling.  *Slack*, 528 U.S. at 484-85.

Having conducted the requisite review, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling.  Accordingly, the Court **DENIES** a certificate of appealability.  The Court also **DENIES** leave to proceed in forma pauperis on appeal because an appeal cannot be taken in good faith.  *See* FED. R. APP. P. 24(a).  This case is closed.

**IT IS SO ORDERED**.


S/Denise Page Hood                                    
Denise Page Hood
United States District Judge

Dated:  January 15, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 15, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry                           
Case Manager

36